UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAULETTE MCDONALD (CRANDELL),

    Plaintiff,

vs.                                                                          CIVIL NO.:  04-CV-73417-DT

COMMISSIONER OF                                               HON. LAWRENCE P. ZATKOFF
SOCIAL SECURITY,                                                MAG. JUDGE WALLACE CAPEL, JR.

    Defendant.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on March 29, 2006

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I.  INTRODUCTION**

This matter is before the Court on the parties' cross motions for summary judgment with respect to the Defendant's decision to deny Plaintiff's application for widow's insurance benefits under the Social Security Act. *See* 42 U.S.C. §§ 402(e) and 423.  The Court is also in receipt of Magistrate Judge Wallace Capel, Jr.'s Report and Recommendation (Docket #20), wherein he recommended granting the Defendant's motion for summary judgment and upholding the Defendant's decision, as well as Plaintiff's objection to that Report and Recommendation.  The Court finds that the facts and legal arguments pertinent to parties' motions are adequately presented in the parties' papers, and the decisional process will not be aided by oral arguments.  Therefore,

1

pursuant to E.D. Mich. Local R. 7.1(e)(2), it is hereby ORDERED that the cross motions be resolved on the briefs submitted, without this Court entertaining oral arguments. For the reasons that follow, the final decision of the Defendant is REVERSED. Plaintiff's Motion for Summary Judgment (Docket #14) is GRANTED, and Defendant's Motion for Summary Judgment (Docket #19) is DENIED. Further, the Court REMANDS this case to the Defendant with instructions to award Plaintiff the widow's insurance benefits to which she is entitled under the Social Security Act.

## II. BACKGROUND

### A. Procedural History

Plaintiff filed for widow's insurance benefits on January 8, 2001, alleging that she has been disabled and unable to work since June 3, 1999, due to "systemic lupus erythmatosis [SLE], high blood pressure, headaches, [and] carpel tunnel." Benefits were denied initially on June 4, 2001. A de novo hearing was held on May 13, 2002, before Administrative Law Judge Alfred H. Varga (the "ALJ"). In a decision dated June 26, 2002, the ALJ found that Plaintiff could perform a limited range of light work and concluded that Plaintiff was not disabled. The ALJ's decision became the Defendant's final decision when the Appeals Council denied review on June 29, 2004. The Plaintiff then commenced this action.

### B. Plaintiff's Testimony

At the hearing before the ALJ, Plaintiff testified to the statements set forth in this Section II.B. Plaintiff was fifty-two at the time of the hearing. She is five foot, five inches tall and weighed two hundred and seven pounds, although her weight fluctuates from one hundred ninety-eight pounds to two hundred forty-five pounds when she takes Prednisone. She completed the twelfth

grade, but never had any vocational or academic training thereafter, and she never worked outside her home. She has been a widow since her husband died on December 3, 1999. Plaintiff lives in a two-story colonial house with her youngest son, who is twenty, and twin granddaughters.

Plaintiff has a valid driver's license with no restrictions. She uses a hand brace when she is in pain, but when she is in "a lot of pain," she does not drive. The pain is in "all [her] joints, [her] feet and [her] hands and . . . sometime[s] [she] can't close [her] hand and pick[] up things."

Plaintiff cannot work due to her lupus, with which she was diagnosed ten or fifteen years ago. Her condition is worsening, especially since the death of her husband, who used to help her with it. She does not believe she could do any kind of work due to the swelling and fatigue she experiences. She never worked during her marriage because her husband took care of her while she stayed at home to raise their four children.

She experiences swelling in her hands and feet and sometimes cannot wear regular shoes or any shoes at all. The swelling occurs on and off during the week and when the weather changes. She has to rest in her recliner or lie down one to two hours each day, but when she reclines, she falls asleep.

Plaintiff gets joint pain all over her body, particularly in her hands, feet, and knees, and sometimes in her shoulder. When she is in pain, she cannot do anything. The pain is "[w]orse than a toothache." When she sits for too long, she has to get up. The pain comes and goes and she is never completely pain-free. She has both good and bad days with her lupus.

She undergoes physical therapy and takes medications to treat her pain. She takes Prednisone, and she went up to twenty milligrams at one time. She started taking the Prednisone before 1999 when Dr. Qazi diagnosed her with lupus. She has gone through cycles with the medication where she feels better and the medication dose is cut down and then she ends up going back on the medication. She is concerned about the side effects the medication may have on her organs. Her husband used to take

care of her, but now she has to take care of herself, with her children's help. She also takes Plaquenil for her eyes.

Plaintiff was hospitalized for her lupus the year her husband died. She was using a walker during that time and it hurt for anyone to touch her skin. Sometimes she would have to be pulled up by her clothes to get her out of a chair.

On a "bad day," Plaintiff cannot do anything for herself and she just stays in bed and tries to get up to go to the bathroom. If her son is home, he helps her. Fifteen of the thirty days prior to the hearing were "bad days," whereas the remaining days were "good." On a "good day," she will cook for her family; however, she has to remind herself to go slow and rest. On a "good day," she is out of bed and able to take care of herself.

Plaintiff is not able to walk more than a half block on a flat surface because she gets tired and has to rest. She rests for about fifteen or twenty minutes before she can walk again. She can stand in one place about ten minutes before she feels "woozy," and has to lean against a wall or sit. Bending over is difficult and she has to take her time. Stooping is also difficult due to her knees. She is right-handed and has problems using her hands. Her hand swells and sometimes she cannot hold a pencil or even lift a fork. She does not have any problem sensing temperature or sharpness and dullness with her hands. She can lift up a gallon of milk with two hands, but she has her children lift things off the stove for her. She cannot sit a long time because when she tries to get up her knees pop and hurt. She can only sit for about fifteen minutes before she has to stand and move her leg around.

On an average day, Plaintiff gets up around seven in the morning because that is when her granddaughters get up. She needs about ten minutes to actually get out of bed, and she sits on the edge of the bed for a while. She goes to bed between eight and nine in the evening and she sleeps well some

nights and other nights are not as good. She estimated that she has about two or three good nights of sleep but on the other nights the pain in her joints wakes her up.

After she wakes up in the morning, Plaintiff slowly makes her way downstairs and makes herself something if she feels well, or her son will fix something to eat. She makes eggs and toast. She will then rest in her recliner for about twenty minutes, and then she reads the Bible or magazines for another twenty minutes. She does not always eat lunch, but when she does, she either prepares it herself or her son brings it to her. She spends her afternoons in her house because since her husband died, she does not "go out as much as [she] used to." She usually prepares dinner with help. She does not go out visiting, but has visitors in her home twice a week for about a half hour at a time, but not longer than that because she cannot sit too long.

She does not do any chores. Her daughter and son do the shopping and cleaning. She sometimes she goes shopping with them. She attends church on Sundays and Bible study on Friday when she can, but she does not make it every week because of pain. She sometimes also has to cancel appointments on her "bad days."

Her primary physician is Dr. Qazi for her lupus. When the ALJ questioned Plaintiff regarding Dr. Qazi's notes that her condition was improving, Plaintiff stated "I do have some improvement, and just like I said, with lupus you never know when it attacks you, so that does not mean that I'm improved totally." Further, the ALJ asked why Plaintiff's treatment notes from Dr. Qazi stated that she was noncompliant with office visits. Plaintiff indicated that she sees her doctor when she is supposed to, but if she feels well, she might not go. However, she stated that "when it attacks me, yes, I do go."

**C.      Vocational Expert's Testimony**

Raymond J. Dulecki, a vocational expert ("VE"), testified at the hearing. The ALJ presented a hypothetical question to the VE involving a claimant with Plaintiff's age, education, and lack of work experience and was asked to assume that her testimony was credible. The VE stated that there was no work that she could do because of her testimony regarding the complaints of pain, swelling, and fatigue. Specifically, the VE stated that her testimony talks of:

> half her time she really can't function at anything, which would be preclusive. Having to lay down, rest for an hour or two a day would be preclusive, and problems with the hands, not being able to use them at all half the time would be preclusive. Complaints of limitations on walking and standing and bending and lifting and the like are limiting factors and appear to be limit [sic] her to only sedentary work, taken by themselves.

The ALJ presented a second hypothetical question to the VE in which a claimant with Plaintiff's age, education, and her lack of work experience possessed the residual functional capacity ("RFC") for

> no more than a light job exertionally but that in addition to the job being light exertionally it would afford the option of sitting or standing off and on, that the jobs would be performed indoors where there would be no extremes of heat or cold, that the jobs would not require fine finger dexterity, that they would not be performed at any unprotected heights, require any driving or climbing or work around dangerous or hazardous machinery as well as being relatively simple and routine in nature, not requiring more than a very few steps in the completion of the assigned tasks as well as being relatively low in stress.

The VE stated that such a claimant would be capable of working in approximately one of about 6,000 light industrial unskilled entry level jobs, involving inspection, packaging and assembly operations in the metropolitan Detroit area. The VE stated that the jobs were consistent with the Dictionary of Occupational Titles ("DOT"), with the exception that the DOT is silent on the sit/stand option. The

VE explained that he has actually observed the jobs and determined whether a sit/stand option was viable. Therefore, when he testified and estimated the number of existing jobs, the presence of a sit/stand option was taken into account.

Plaintiff's counsel asked the VE whether moderately severe pain frequently occurring (thirty-four to sixty-six percent of the time) would be work preclusive if it interfered with Plaintiff's ability to maintain attention and concentration. The VE stated that such a limitation would be work preclusive.

**D.     ALJ's Conclusions**

After reviewing the testimony presented at the hearing and the medical evidence in the record, the ALJ found that "[t]he medical evidence establishes that the claimant has lupus, hypertension, complaints of headaches, complaints of carpal tunnel syndrome, and complaints of knee pain, but that she does not have an impairment or combination of impairments," sufficiently severe to meet or medically equal the criteria of any condition in section 14.02 or any other of the Medical Listings in Appendix 1, Subpart P, Regulations No. 4. The ALJ found Plaintiff's testimony not to be fully credible. Thus, he determined that Plaintiff had the RFC to perform a limited range of light work. Therefore, the ALJ concluded that Plaintiff is not eligible for disability.

### III.  STANDARD OF REVIEW

This Court's review of the ALJ's conclusions is limited. The findings of the ALJ regarding Plaintiff's disabled status are conclusive if supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g) (1997). Substantial evidence means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

It is more than a scintilla of evidence, but less than a preponderance of evidence. *Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

This standard presupposes that there is a "zone of choice" within which the ALJ may make a decision without being reversed. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). Even if the court might arrive at a different conclusion, an administrative decision must be affirmed if it is supported by substantial evidence. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). Finally, consideration of the whole record does not mean that the ALJ must mention or comment on each piece of evidence submitted. *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998); *see also Thacker v. Comm'r of Soc. Sec.*, 99 Fed.Appx. 661, 665 (6th Cir. 2004) (unpublished).

## IV. ANALYSIS

Plaintiff advances several claims in her Motion for Summary Judgment. Her Motion argues that the ALJ's decision is not supported by substantial record evidence because: (1) the ALJ failed to properly evaluate Plaintiff's lupus under Medical Listing 14.02 as supported by her treating physician; (2) the ALJ failed to properly evaluate Plaintiff's impairments in combination; (3) the ALJ erred in assessing Plaintiff's credibility; (4) the ALJ erred in assessing Plaintiff's RFC, and thus, in concluding that she was capable of substantial gainful employment; and (5) the ALJ failed to accept the vocationally limiting aspects of her testimony as outlined by the VE. In response, Defendant's Motion for Summary Judgment contends that these aspects of the ALJ's decision are supported by substantial evidence.

**A.     Widow's Insurance Benefits**

This Court's review of the ALJ's conclusions is limited. Widows insurance benefits are governed by 42 U.S.C. §§ 402(e) and 423. A claimant seeking widow's insurance benefits first must

meet the following requirements: attainment of age fifty; the individual must be unmarried, and the disability must have begun no more than seven years following the death of his or her spouse. 20 C.F.R. § 404.335 *et seq*. In the present case, the ALJ found that Plaintiff met all the non-disability requirements to be eligible for widow's insurance benefits. A widow bears the burden of proving that she is disabled under the SSA. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1512(a).

### 1. *Medical Listing*

Plaintiff argues that she meets Medical Listing 14.02, Systemic Lupus Erythematosus, and that the opinion of her treating physician supporting same was improperly rejected. This Court agrees. Listing 14.02(A) requires that Plaintiff show that she has been diagnosed with lupus and meets the criteria for same. 20 C.F.R. Pt. 404, Supt. P, App. 1 § 14.02(A). In this case, the ALJ found that Plaintiff had lupus. Thus, Plaintiff also must show that one other system or organ is involved under Listing 114.02(A)(1)-(11). Plaintiff claims the following Listing 114.02(A) criteria exist in this case:

\* \* \* \* \*

> (2) Musculoskeletal involvement, as described under the criteria in 101.00ff; or . . .

\* \* \* \* \*

> (10) Skin involvement, as described under the criteria in 8.00ff; or . . .

The Court therefore reviews the record to determine whether Plaintiff has musculoskeletal (*i.e.*, joint) involvement or skin involvement.

An ALJ has the following duty in examining the record as it pertains to Plaintiff and Listing 14.02:

> The ALJ is [] required to review the claimant's symptoms and make specific findings essential to the conclusion. *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). It is unnecessary, however, to require the ALJ to state why a claimant failed to satisfy every element of a listing. *Id.* at 1201. Further, the ALJ is not required to

9

> specifically identify the evidence supporting the ALJ's conclusion that the impairment does not meet a listing. In *Gonzalez*, for example, the ALJ did not specifically state what evidence supported his conclusion as to why the claimant's impairments failed to meet the listings. The Ninth Circuit found that the ALJ's five page, single-spaced summary of the record served as an adequate statement of the foundations on which the ALJ's ultimate factual conclusions were based. *Id.*
>
> On the other hand, the ALJ's findings should be as comprehensive and analytical as feasible, and should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the ALJ's decision. *Cotter*, 642 F.2d at 705. Otherwise, the reviewing court is unable to properly exercise its responsibility under 42 U.S.C. § 405(g) to determine if the Secretary's decision is supported by substantial evidence. *Cotter*, 642 F.2d at 705.

*Holland v. Massanari*, 152 F.Supp.2d 929, 934 (W.D.Tenn. 2001).

### 2. *ALJ's Finding vs. Treating Physician's Treatment and Diagnoses*

After discussing the medical evidence in this case, the ALJ stated:

> [t]here is no evidence that the claimant has loss of function of any extremity or significant pain in any of her joints. The claimant's cardiovascular work up has been relatively unremarkable and she does not exhibit significant skin involvement. She is neurologically intact and there is no evidence of significant limitations except for reduced concentration. Therefore, the claimant does not have an impairment, or impairments, which meet or equal section 14.02.

The ALJ's findings are inconsistent with the opinions rendered by Plaintiff's treating physician, Dr. Qazi. Under the law of this Circuit, Dr. Qazi's medical opinions and diagnoses (as those of the treating physician) are entitled to substantial deference, particularly if those opinions are uncontradicted. *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). The law in this Circuit clearly states:

> The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the

10

> claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records.

*Wesley v. Comm'r of Soc. Sec.*, 205 F.3d 1343 (Table), 2000 WL 191664, at **5 (6th Cir. 2000) (quoting *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994)).

Of course, such deference is due only if the treating physician's opinion is based on sufficient medical data, *see* 20 C.F.R. § 404.1529, and an ALJ may reject a physician's opinion when it is brief, conclusory, or not supported by medically acceptable clinical or laboratory diagnosis techniques. 20 C.F.R. § 404.1527(d)(2). Accordingly, treating physicians' opinions must be grounded on objective medical evidence, and no deference need be afforded those opinions if they are simply conclusory. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984); *Duncan*, 801 F.2d at 855 (citing *King*, 742 F.2d at 973). Therefore, the weight to be given a doctor's opinion by an ALJ will depend on the extent to which it is supported by "specific and complete clinical findings." *Giddings v. Richardson*, 480 F.2d 652, 656 (6th Cir. 1973). *See also Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994) (citing *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir.1990)).

In this case, the ALJ rejected the conclusion of Dr. Qazi that Plaintiff was disabled by her impairments because, in the ALJ's mind, such a conclusion would conflict with Dr. Qazi's treatment notes. More specifically, the ALJ suggested that Dr. Qazi's treatment notes provided substantial evidence to support his finding that Plaintiff's lupus was under control and her symptomology had significantly improved. The Court, however, finds that the ALJ's conclusion is not supported by substantial evidence. To the contrary, the Court finds that Dr. Qazi's opinion that Plaintiff's condition is vocationally limiting and that there was joint and skin involvement in Plaintiff's case is supported by his specific and complete clinical findings.

11

In completing the Questionnaire related to Plaintiff's claim for widow's benefits, Dr. Qazi noted that Plaintiff had the following symptoms and/or signs: joint and/or muscle pain, joint swelling, joint stiffness, muscle spasm, anemia, rashes, hair loss, lack of energy, loss of appetite, loss of weight, oral or nasal ulcers, photosensitivity, fever, fatigue, malaise and weakness. In addition, Dr. Qazi documented that Plaintiff suffers from neuropathy and musculoskeletal involvement ("generalized joint pains, swelling, stiffness, myalgia"); and skin involvement ("rash").

The opinions of Dr. Qazi set forth on the Questionnaire are not baseless conclusions. Dr. Qazi's opinions are heavily supported by his specific and complete clinical findings while treating Plaintiff for the four years leading up to the hearing before the ALJ. For example, Dr. Qazi's notes and clinical findings demonstrate that there were symptoms and problems, as well as objective findings and related medications, that Plaintiff was enduring joint and/or skin involvement on the following dates: 10/5/98, 2/15/99, 4/29/99, 5/21/99, 5/29/99 through 6/1/99, 7/22/99, 1/20/00, 5/8/00, 6/26/00, 7/7/00, 7/28/00, 10/2/000, 10/19/00, 1/18/01, 4/2/01, 6/14/01/ 10/4/01, 10/26/01, 12/4/01, 1/10/02 and 3/26/02. In other words, Dr. Qazi's notes document skin and/or joint involvement in virtually every visit of Plaintiff for the period leading up to the hearing before the ALJ.

The ALJ apparently overlooked these findings because there were occasional entries in Dr. Qazi's notes that there was some improvement in Plaintiff's condition from one visit to the next and that on some occasions there was an absence of skin involvement and/or joint pain. Having reviewed the record as a whole (including the many doctor visits where there was joint pain and/or skin involvement, as documented in the preceding paragraph), such occasional improvement and/or lack of joint pain and/or skin involvement is *de minimis*. More significantly, those few occasions

12

constitute no more than a scintilla of evidence and less than substantial evidence that Plaintiff did not suffer from skin and/or joint involvement. In addition, the fact that Plaintiff had a few visits without complaints of joint pain and/or skin involvement does not preclude the specific and complete findings of Dr. Qazi that Plaintiff suffered from joint and/or skin involvement in conjunction with her lupus.

Finally, Dr. Qazi's opinions and findings that Plaintiff has lupus with joint pain and/or skin involvement are not contradicted by any medical professional. This is significant, as the uncontradicted opinions of treating physicians are entitled to substantial deference, particularly if those opinions are uncontradicted, *see King, supra,* and are supported by sufficient medical data, *see* 20 C.F.R. § 404.1529. As noted above, Dr. Qazi's conclusions are supported by objective, specific and complete clinical findings based on substantial medical data compiled while treating Plaintiff over a number of years.

Accordingly, for the reasons set forth above, the Court finds that there is not substantial evidence to support the ALJ's conclusion that Plaintiff "does not have an impairment, or impairments, which meet or equal section 14.02." To the contrary, the Court finds that the substantial evidence in this case supports but one conclusion: Plaintiff's lupus, in conjunction with the joint and skin involvement documented by Dr. Qazi, constitutes "an impairment, or impairments, which meet or equal section 14.02."

**B.     Credibility**

Plaintiff also argues that the ALJ improperly assessed her credibility. In evaluating subjective complaints of disabling pain, this Court looks to see whether there is objective medical evidence of an underlying medical condition. If there is such objective medical evidence, then the Court must ascertain (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition, or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain. *McCoy on Behalf of McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995) (quoting *Stanley v. Sec'y of Health and Human Servs.*, 39 F.3d 115, 117 (6th Cir.1994) (citing *Jones v. Sec'y of Health and Human Servs.*, 945 F.2d 1365, 1369 (6th Cir.1991) and quoting *Duncan*, 801 F.2d at 853). As Social Security Ruling ("SSR") 96-7p points out, the ALJ's "determination or decision must contain specific reasons for the finding on credibility . . . to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *See also, Murray v. Comm'r of Soc. Sec.*, 2004 WL 1765530, *4 (E.D. Mich., Aug. 3, 2004) (slip copy).

In this case, Plaintiff argues that the ALJ did not apply the aforementioned test. The record reflects that ALJ referenced Plaintiff's pain complaints, daily activities, her failure to complain of side effects from her medication, and the lack of her complaints in the treatment notes regarding the need to stay in bed on "bad days" or the need to lie down one to two hours a day due to fatigue and swelling joints. The ALJ did not, however, "contain specific reasons for the finding on credibility . . . to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *See* SSR 96-7p. Again, the findings and conclusions of the ALJ's discussion ignore the fact that the objective (and uncontradicted)

14

evidence of Plaintiff's condition and day to day pain and lifestyle (*i.e.*, Dr. Qazi's notes) supported the testimony she provided.

Accordingly, this Court finds that the ALJ's dismissal of Plaintiff's credibility is not supported by the record. The Court also finds that the objective medical evidence, as documented in Section IV.A. above, confirms that her objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain. Finally, as no evidence was submitted which would contradict Plaintiff's testimony, the Court concludes that Plaintiff's testimony as to the extent of her limitations must be accepted.

**C.     VE Testimony**

Plaintiff argues that the VE opined that Plaintiff would be disabled if her testimony regarding complaints of pain, swelling and fatigue was credible because Plaintiff would have vocational limitations which would preclude her ability to work. In fact, the Court notes that the VE was responding to a hypothetical and did not make any conclusions regarding Plaintiff. As the Court has concluded that Plaintiff's testimony must be deemed credible in this case, however, it is clear that the VE would have concluded that Plaintiff would be limited to performing sedentary work, and that no jobs exist available within the realm of sedentary work that she was capable of performing.

In addition, the Court finds that the VE's opinion regarding the existence of jobs for someone who has the capacity to do light exertional work is inapplicable here. The opinions regarding light exertional jobs cannot be accorded any weight because nothing in the record supports a finding that Plaintiff was capable of performing light exertional work. Therefore, the Court concludes that no jobs exist for Plaintiff within the restrictions to which she is subject.

**D.      Conclusion**

As discussed above, the Court finds that (1) Plaintiff's lupus, in conjunction with the joint and skin involvement documented by Dr. Qazi, constitutes "an impairment, or impairments, which meet or equal section 14.02," (2) Plaintiff's testimony as to the extent of her limitations must be accepted, and (3) there are no jobs available in the workforce which this Plaintiff can perform. Accordingly, for those reasons and the reasons set forth above, the Court holds that the substantial evidence in this case does not support the Defendant's decision. Further, the Court finds that all factual issues have been resolved and the record adequately demonstrates that Plaintiff is disabled and entitled to widow's insurance benefits.

## V.  CONCLUSION

Accordingly, for the reasons stated above, the final decision of the Defendant is REVERSED. Plaintiff's Motion for Summary Judgment (Docket #14) is GRANTED, and Defendant's Motion for Summary Judgment (Docket #19) is DENIED. Further, the Court REMANDS this case to the Defendant with instructions to award Plaintiff the widow's insurance benefits to which she is entitled under the Social Security Act.

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  March 29, 2006

CERTIFICATE OF SERVICE

    The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on March 29, 2006.

s/Marie E. Verlinde  
Case Manager  
(810) 984-3290
